## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

Angelica Textile Services, Inc.,     )
     )
    Plaintiff,     )
     )
       VS.     )  **CIVIL ACTION NO. 12-cv-10938**
     )
Local Union 170, International     )
Brotherhood of Teamsters,     )
     )
    Defendant.     )
_____)

### COMPLAINT

NOW COMES, Angelica Textile Services, Inc., through its Counsel, Matthew A. Slater, Esq. of D'Ambrosio Brown LLP, and brings this action pursuant to Section 301 of the Labor Management Relations Act of 1947, as amended, to vacate the arbitration award issued in favor of Defendant International Brotherhood of Teamsters, Local Union 170.

### I.      JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 185 and 28 US.C. § 1331.

2.     Venue is proper in the District Court pursuant to the Labor Relations Management Act, as amended, ("LMRA"), 29 U.S.C. § 185 (a) & (c) and 28 U.S.C. § 1391.

### II.      THE PARTIES

3.     Plaintiff, Angelica Textile Services, Inc., (hereinafter "Angelica" or the "Company"), is a New York Corporation that owns and operates a laundry facility located at 104 Lamartine Street in Worcester, Massachusetts. Plaintiff is an Employer in an industry affecting commerce within the meaning of § 152 of the LMRA.

4.      Defendant, International Brotherhood of Teamsters, Local 170 (hereinafter the "Union"), is a labor organization within the meaning of § 152 of the LMRA.

5.      The Union is the certified bargaining representative for Angelica's driver and mechanic employees, excluding supervisors.

## III.    THE FACTS

### The Collective Bargaining Agreement and Angelica's Safety Policies

6.      Angelica and the Union are parties to a collective bargaining agreement ("CBA"), effective November 1, 2010 through October 31, 2013, setting forth the terms and conditions of employment for Angelica's mechanic employees ("the bargaining unit"). A copy of the CBA is attached hereto as Exhibit 1.

7.      Article III of the CBA, Management Rights, expressly retains the right of the Company to discipline and discharge employees for just cause. Article II provides, in relevant part:

> "Except for matters otherwise specifically provided herein, the Employer has and retains full control and discretion in all matters relating to the management, personnel and conduct of its business. It is understood that matters relating to the management of the Company… the right to relieve employees because of lack of work or because of readjustment of work schedule, or for just cause, and in general the right to control operations are not subject to this Agreement and are not subject to the arbitration provisions contained herein…"

See Exh. 1, p. 4.

8.      Article X of the CBA, Discharge and Suspension, sets forth the rules and procedures for employee discipline and discharge.

9.      Section D of Article X describes the agreed upon progressive disciplinary policy and states, in relevant part, that:

"After at least one (1) verbal warning, upon receipt of a third (3rd) written warning, the employee will be subject to immediate discharge except in those disciplinary situations where the circumstances and/or the type of offense are such that discharge without a prior warning is appropriate."

See Exh. 1, p.11.

10.     Section J of Article X provides, in relevant part, that:

No progressive discipline need be given to an employee before he/she is discharged if the cause of discharge is:

1.     Dishonesty…

11.     Failure to comply with the company's Lockout/Tagout, CBW/Shuttle Safety, or Confined Space Entry policies.

See Exh. 1, p.12.

11.     The Company's Lockout/Tagout Policy requires that prior to performing maintenance on a machine, an employee ensure that the machine is isolated from all potentially hazardous energy sources by placing a lockout device on the machine to isolate energy in accordance with the established procedure and then placing a tagout device on the energy isolating device to indicate that the machine may not be started until the tagout device is removed. See the Lockout/Tagout Program attached hereto as Exhibit 2.

12.     The Company's Shuttle Safety Policy establishes procedures to prevent the Company's employees and others from coming in contact with moving shuttles. See Shuttle Safety Policy attached hereto as Exhibit 3.

13.     Under the Shuttle Safety Policy, all areas of shuttle movement are enclosed by a 7-foot high interlocked gate with sensors that immediately stop the shuttle whenever someone enters into the shuttle movement area.

14.     Section 2 of the Shuttle Safety Policy identifies the procedures to be performed by an employee when performing maintenance activities on the shuttle, including, turning off the

power to the shuttle by applying lockout/tagout procedures and entering the shuttle movement area through the secured gate opening. See Exh. 3, p.3.

15.      Section 2.5 of the Shuttle Safety Policy prohibits employees from entering into the shuttle movement area by squeezing between the shuttle and other objects, such as a dryer or conveyor belt. See Exh. 3, p.3.

16.      The Company's Lockout/Tagout Policy and Shuttle Safety Policy were implemented in accordance with the applicable OSHA regulations regarding lockout/tagout procedures. See 29 CFR 1910.147 & 212 (a)(1).

17.      Article VIII of the CBA contains a three step grievance procedure for the parties to resolve disputes relating to the interpretation or enforcement of the CBA. See Exh. 1, p.8-10.

18.      Step Three of the grievance procedure allows either party to submit a grievance to arbitration in the event that it is not resolved at the earlier steps. See Exh. 1, p.9.

19.      Article VIII provides, in relevant part, that:

> The decisions of the arbitrator shall be final and binding on all matters, but in no case shall the arbitrator have the power to add to, subtract from, nor shall he substitute his discretion for that of the Company and Union.

See Exh. 1, p.9-10.

### The Discharge of Samuel Ellis and Grievance

20.      Samuel Ellis (hereinafter "Ellis") was a mechanic at the Company's Worcester facility and a member of the bargaining unit.

21.      Ellis was present at multiple Company training sessions regarding the Company's Lockout/Tagout and Shuttle Safety Policies and was fully aware of the Company rules regarding lockout/tagout and shuttle safety.

22.     On November 16, 2011, Ellis attempted to enter the shuttle movement area to perform maintenance on Shuttle No. 2 by climbing over a dryer's energized conveyor belt, rather than through the interlocked gate as required by the Company's Shuttle Safety Policy.

23.     Kevin McDonough, a health and safety manager, observed Ellis in the shuttle movement area and noted that Ellis had not entered or exited the shuttle movement area through the interlocked gate.

24. The only other access point to the shuttle area is to either crawl under the dryers or climb over the dryer discharge conveyor belt.

25.     When Manager McDonough questioned Ellis about what safety precautions he used to enter the shuttle movement area, Ellis denied that he had been in the shuttle movement area at all.

26.     However, Ellis's actions were caught on the Company security camera and Ellis later admitted that he had been in the shuttle movement area and that he had not accessed the area through the interlocked gate.

27.     The Company terminated Ellis's employment for violations of the Company lockout/tagout policy, shuttle safety policy, and for dishonesty.

28.     The Union grieved Ellis's termination and the parties submitted the grievance to arbitration for determination by Arbitrator Barry Fieden.

**The Arbitration and Award**

29.     On April 12, 2012, a hearing was held before Arbitrator Fieden at the Company's Worcester facility. The issues before the arbitrator were: 1) whether the Company violated the contract by terminating Samuel Ellis, and 2) if it did violate the contract, what the remedy should be.

5

30.     On April 30, 2012, Arbitrator Fieden issued his decision ordering the Company to reinstate Samuel Ellis. The Arbitration Award is attached hereto as Exhibit 4.

31.     In his decision, Arbitrator Fieden found that Ellis violated the Company's lockout/tagout and shuttle safety policies and that the Company acted within the terms of the CBA by terminating Ellis, specifically stating:

> Mr. Ellis's act in violation of safety regulations is a serious breach of safety rules and he must be severely punished. **The company's action to discharge Mr. Ellis was consistent with the terms of the union contract.** I am convinced that Mr. Ellis received enough training to fully understand the safety regulations pertaining to Lockout/Tagout and proper shuttle procedure. **The contract specifically excludes safety violations pertaining to the shuttle from the requirement of progressive disciplinary procedure.**

Exh. 4, p. 5-6. (Emphasis Added).

32.     However, after finding that the contract specifically excluded safety violations from progressive discipline and that the Company did not violate the contract by terminating Ellis, Arbitrator Fieden decided that he had the authority to mitigate the penalty imposed by the Company and reduced the termination to a suspension because of his consideration of Ellis's ten years of service with the company and he believed that Ellis was a "hardworking, conscientious employee." Arbitrator Fieden asserted that he had the authority to do this because:

> Article X of the contract states that no progressive discipline need to be given for the violation of shuttle safety or Lockout Tagout procedures, prior to discharge. It does not, however, require that discharge must be the punishment. As the arbitrator in this case, I have the authority to review the Company's action without violating the contract.

See Exh. 4, p .6.

33.     Additionally, although Arbitrator Fieden acknowledged that Ellis was terminated for violating the Company's safety procedures and for lying to his supervisor and found as a fact

that Ellis had lied to his supervisor, he failed to address Ellis's dishonesty when making the decision to return Ellis to work. See Exh. 4, p. 2, 6.

## CAUSE OF ACTION TO VACATE ARBITRATION AWARD

34.     The Company re-alleges and incorporates Paragraphs 1-33 as if fully set forth herein.

35.     The only issues before Arbitrator Fieden where: 1) whether the Company violated the CBA by terminating Samuel Ellis for violations of the Company's lockout/tagout and shuttle safety policies and for dishonesty, and 2) the appropriate remedy if the Company did violate the CBA.

36.     After Arbitrator Fieden determined in the first instance that Ellis committed the offenses for which he was terminated and that the Company acted in accordance with the CBA when it terminated his employment, the arbitrator was not free to impose a remedy different from that decided upon by the Company.

37.     In finding that the Company did act in accordance with the Contract in discharging Ellis, yet imposing his own remedy, Arbitrator Fieden exceeded the authority granted to him under the CBA by substituting his discretion for that of the Company and thereby dispensed his own brand of industrial justice.

38.     Arbitrator Fieden's award does not draw its essence from the CBA, in that:

     a) it conflicts with the express, unambiguous terms of the CBA;

     b) it cannot be rationally derived from the CBA;

     c) it impermissibly modifies the CBA; and

     d) it exceeds the scope of the Arbitrator's authority.

Wherefore, Plaintiff requests that this Court vacate the arbitration award and for any such other relief that the Court deems just and proper.

Respectfully Submitted,
The Plaintiff,
Angelica Textile Services, Inc.,
By its Attorneys,


   /s/ Matthew A. Slater
Gerry D'Ambrosio, BBO #564199
Matthew A. Slater, BBO #662864
D'Ambrosio Brown LLP
185 Devonshire Street, 10 Floor
Boston, MA 02110
Tel.:    (617) 720-5657
Fax:    (617) 723-4967
Email: mslater@dambrosiobrown.com

DATED:  May 24, 2012