# United States District Court
# District of Massachusetts

|  |  |
|---|---|
| ANGELICA TEXTILE SERVICES, INC. ) | |
|     Plaintiff/Counter-claim Defendant ) | |
| ) | |
| v. ) | **CIVIL ACTION** |
| ) | **No. 12-10938-TSH** |
| LOCAL UNION 170, INTERNATIONAL ) | |
| BROTHERHOOD OF TEAMSTERS, ) | |
|     Defendant/Counter-claim Plaintiff ) | |

### MEMORANDUM AND ORDER ON
### CROSS-MOTIONS FOR SUMMARY JUDGMENT
### May 21, 2013

**HILLMAN, J.**

### I. Procedural Background

This dispute arises from the termination of Samuel Ellis ("Ellis") from his employment at Angelica Textile Serv., Inc. ("Plaintiff") and the subsequent grievance arbitration between Plaintiff and Local Union 170 ("Defendant"). Plaintiff brings an action under Section 301 of the Labor Management Relations Act of 1947, seeking a court order vacating the arbitration award of federal arbitrator Barry Feiden (the "Arbitrator") in favor of Defendant. 29 U.S.C. § 185. Defendant brings a counter-claim, seeking a court order affirming the arbitration award, as well as all costs and attorney's fees. Both parties now move for summary judgment. For the following reasons, Plaintiff's motion for summary judgment is denied and Defendant's cross-motion for summary judgment is denied in part and allowed in part.

## II. Jurisdiction

Section 301 of the Labor Management Relations Act of 1947 grants subject matter jurisdiction to U.S. District Courts over actions such as this one without respect to diversity or amount in controversy. 29 U.S.C. § 185(a). Personal jurisdiction is also appropriate here where the employment and termination at issue all took place in Worcester, Massachusetts. *Id.* § 185(c).

## III. Facts

There is no dispute as to the identities of the parties. Plaintiff is a New York Corporation that owns and operates a laundry facility in Worcester, Massachusetts. Defendant is the collective bargaining representative for drivers and mechanics working for Plaintiff. Plaintiff is an employer and Defendant is a labor organization within the meaning of 29 U.S.C. § 152. Plaintiff and Defendant are parties to a Collective Bargaining Agreement ("CBA") that governs the terms and conditions of employment for drivers and mechanics employed by Plaintiff. Ellis was an employee of Plaintiff covered by this CBA.

The following facts are drawn from the terms of the CBA and the findings of the Arbitrator.[1] Article X of the CBA sets forth the procedures for the suspension and/or discharge of union members working for Plaintiff. Section A of Article X provides that "[n]o employee will be disciplined or discharged except for just cause." Section D provides that

> [a]fter at least one (1) verbal warning, upon receipt of a third (3rd) written warning, the employee will be subject to immediate discharge except in those disciplinary situations where the circumstances and/or type of offense are such that discharge without prior warning is appropriate. Such extraordinary situations include, but are not limited to: theft, gross insubordination, fighting…."

---

[1] The CBA and the Arbitrator's decision were filed with the Complaint, and also with the parties' statements of material facts.

Section J of this article also provides a list of potentially terminable offenses, stating that "[n]o progressive discipline need be given to an employee before he/she is discharged if the cause of such discharge is 1. Dishonesty….11. Failure to comply with [Plaintiff's] Lockout/Tagout, CBW/Shuttle Safety, or Confined Space Entry policies." The three-step grievance procedure in turn is set forth in Article VIII of the CBA. Once a grievance has reached arbitration, the final stage of the grievance process, Step Three of Article VIII provides that "[t]he decisions of the arbitrator will be binding on all matters, but in no case shall the arbitrator have the power to add to, subtract from, nor shall he substitute his discretion for that of [Plaintiff] and [Defendant]."

On November 16, 2011, Ellis circumvented an interlock gate and entered a hazardous work area by crossing an energized conveyor belt. This is a violation of the Lockout/Tagout Program set forth in Plaintiff's safety policies. Ellis initially denied having violated safety procedures, though his actions were caught on camera and he eventually admitted both the safety violation and his initial dishonesty. After confessing to these infractions, Ellis was discharged by Plaintiff on the same day, November 16, 2011.[2] This termination was without any prior warnings or other disciplinary action.

Defendant grieved Ellis' termination under the CBA, and ultimately the grievance was brought before the Arbitrator on April 12, 2012. Both parties stipulated that the Arbitrator was to decide the following questions: "Did [Plaintiff] violate the contract by terminating [Ellis]? If so, what shall be the remedy?" The Arbitrator's final decision stated that

> Mr. Ellis's act in violation of safety regulations is a serious breach of safety rules and he must be severely punished. The company's action to discharge Mr. Ellis was consistent with the terms of the union contract. I am convinced that Mr. Ellis received enough training to fully understand the safety regulations pertaining to Lockout/Tagout and proper shuttle procedure. The contract

---

[2] In addition to violating the Lockout/Tagout Program, Ellis was dismissed for his dishonesty. Plaintiff notes that the Arbitrator did not discuss the dishonesty aspect of Ellis' dismissal in detail. The Court notes that there is no factual dispute as to Ellis' actions; he committed two offenses listed in Section J of Article X of the CBA. Therefore, the Arbitrator's contractual interpretation of Section J with regard to the safety violation is equally applicable to Ellis' dishonesty.

3

> specifically excludes safety violations pertaining to the shuttle from the requirement of progressive disciplinary procedure.

The Arbitrator went on to find

> Article X of the contract states that no progressive discipline need to be given for the violation of shuttle safety or Lockout Tagout procedures, prior to discharge. It does not, however, require that discharge must be the punishment. As the arbitrator in this case, I have the authority to review the Company's action without violating the contract.
>
> …
>
> [Plaintiff] is directed to reinstate Mr. Ellis with full seniority rights and all benefits within five business days after receipt of this reward.

## IV. Standard of Review

### *Summary Judgment*

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, a court may consider all the well-pleaded facts included in the pleadings, affidavits and discovery, stipulations, or other materials in the record. Fed. R. Civ. P. 56(c). Moreover, the Court must resolve any ambiguities in favor of the non-moving party. *Rivera-Colon v. Mills*, 635 F.3d 9, 12 (1st Cir. 2011). "The presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review." *Mandel v. Boston Phoenix, Inc.*, 456 F.3d 198, 205 (1st Cir. 2006).

### *Labor Arbitration Awards*

"Judicial review of arbitral awards is extremely narrow and *exceedingly* deferential." *Keebler Co. v. Truck Drivers, Local 170*, 247 F.3d 8, 10 (1st Cir. 2001) (quoting *Bull HN Info. Sys. v. Hutson*, 229 F.3d 321, 330 (1st Cir. 2000)) (emphasis added). The First Circuit has called it "one of the narrowest standards of judicial review in all of American jurisprudence," *UMass Mem'l Med. Ctr., Inc. v. United Food And Commercial Workers Union*, 527 F.3d 1, 4 (1st Cir.

2008) (quoting *UMass Mem'l Med. Ctr., Inc. v. United Food and Commercial, Workers Union, Local 1445,* No. 06-40274, 2007 WL 2507736 at *9 (D. Mass. Aug. 31, 2007)).  As a contractual matter both parties have agreed to be bound by the arbitrator's judgment, and this agreement also binds the Court. *Id.* at 4.  The only task of a court "is to determine whether the arbitrator exceeded his authority by failing to apply the contract in a plausible manner." *Salem Hosp. v. Mass. Nurses Ass'n*, 449 F.3d 234, 238 (1st Cir. 2006) (internal quotation omitted).  Thus, the fact "that a court is convinced [the arbitrator] committed serious error does not suffice to overturn his decision." *United Paperworkers*, 484 U.S. at 38.  A challenge to an arbitrator's interpretation of an agreement can be successful only if the losing party shows that the award is "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or, (3) mistakenly based on a crucial assumption that is concededly a non-fact." *New England Health Care Employees Union, Dist. 1199, SEIU, AFL-CIO v. Rhode Island Legal Services*, 273 F.3d 425, 427 (1st Cir. 2001).

## V. Discussion

Neither party seeks to invalidate the CBA.  Additionally, the Arbitrator found that the facts are both clear and undisputed.  Therefore, the only question before this Court is whether or not the arbitrator reasonably exercised the authority given to him by the CBA.  If so, then his decision should be affirmed, if not then his decision should be vacated.

Plaintiff's preferred reading of the CBA is that even if the Section J of Article X of the CBA does not *require* dismissal for dishonest and violations of the Lockout/Tagout Program, it permits that punishment *at the employer's discretion*.  Plaintiff notes that "the sole issue before the Arbitrator "was not whether there was "just cause" for Ellis' termination, but whether the Company violated the CBA by terminating Ellis."  Plaintiff argues that the Arbitrator's express

finding that Plaintiff's actions were "consistent" with the CBA therefore precludes any subsequent reinstatement of Ellis because discharge was a punishment available at the sole discretion of Plaintiff.

To support this position, Plaintiff relies heavily upon two cases from the First Circuit, *S.D. Warren Co., a Div. of Scott Paper Co. v. United Paperworkers' Int'l Union, AFL-CIO, Local 1069*, 845 F.2d 3 (1st Cir. 1988) and *Georgia-Pac. Corp. v. Local 27, United Paperworkers Int'l Union*, 864 F.2d 940 (1st Cir. 1988), where arbitration awards were overturned as clearly beyond the scope of the authority granted to those arbitrators by those CBAs.  Plaintiff's reliance is misplaced as both cases are distinguishable from the facts at hand. The *Warren* CBA contained a list of enumerated offenses including drug possession (the offense at issue in that case) that were affirmatively identified as cause for discharge, stating "[v]iolations of the following rules are considered causes for discharge…" *Warren*, 845 F.2d at 6.  In *Georgia-Pac.* the CBA stated "1. Any employee may be discharged for just cause. Without limiting the generality of the foregoing some of the causes for immediate discharge are:….(5) dishonesty" (dishonesty was the offense at issue in that case). *Georgia-Pac.*, 864 F.2d at 942. There can be no doubt that under those CBAs, the offenses at issue were per se just cause for immediate discharge.

Plaintiff asserts that the CBA here states that both dishonesty and violation of the Lockout/Tagout Program are similarly per se justifications for dismissal at Plaintiff's discretion. Indeed, Section D of the CBA here does use similar language, stating that "discharge without a prior warning is appropriate" for offenses such as gross insubordination, theft, and willful destruction of property.  However, the offenses committed by Ellis are enumerated in Section J rather than Section D.  There is no analogously unambiguous language in Section J, which states

only that "[n]o progressive discipline need be given to an employee before he/she is discharged" if the cause of such discharge is, among other offenses, dishonesty or violation of the Lockout/Tagout Program.

Defendant seizes upon the different language in Sections D and J and would read the CBA as establishing two separate categories of offenses (albeit with some overlap). Under Defendant's interpretation the offenses enumerated in Section D are per se cause for immediate dismissal, while those in Section J merely permit it if, in the opinion of an arbitrator, there is also "just cause." Defendant argues that, notwithstanding the language used in the award, this interpretation was implicitly used by the Arbitrator himself when he found that Ellis had committed a serious offense listed in Section J, but still required Plaintiff to reinstate him. Additionally, Defendant argues that while the CBA clearly states that "just cause" is a prerequisite for any dismissal, it does not explicitly state which party is entitled to make determinations as to "just cause." Since the parties charged the Arbitrator with determining the propriety of a dismissa (which in turn cannot ever be proper without "just cause") the Arbitrator necessarily had to make a determination as to "just cause."

I find that both proposed interpretations of the CBA are plausible. However, when reviewing the decision of an arbitrator, this Court is bound to accept the decision adopted by the arbitrator if it is supported by any plausible contractual interpretation. *United Paperworkers*, 484 U.S. at 38. It does not matter if this Court agrees with that interpretation. *Id*. Furthermore, "Arbitrators ordinarily are under no obligation to explain the reasons for an award-even where the contractual basis for the award is ambiguous." *Keebler*, 247 F.3d at 12 (citing *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597-98, 80 S. Ct. 1358 (1960)).

7

Plaintiff is correct that the language of the award is awkward; the Arbitrator found that Plaintiff had not violated the CBA, yet still reinstated Ellis. However, the intent of the Arbitrator is perfectly clear: Ellis should be punished severely, but not discharged, for his offenses. Even if the language of the award is less explicative than it could be, that intent is supported by a plausible interpretation of the CBA: commission of an offense enumerated in Section J does not require summary dismissal, but instead permits it *if* the Arbitrator also finds that there is "just cause."

The First Circuit has explicitly endorsed "upholding [an] arbitrator's decision on grounds or reasoning not employed by the arbitrator himself." *Labor Relations Div. of Const. Indus. of Massachusetts, Inc. v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local No. 379*, 29 F.3d 742, 747 (1st Cir. 1994). Moreover, "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *Teamsters Local Union No. 42 v. Supervalu, Inc.*, 212 F.3d 59, 67 (1st Cir. 2000) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960)). Although Plaintiff claims that the Arbitrator has stepped outside the confines of the CBA and "dispensed his own brand of industrial justice," the Arbitrator merely resolved ambiguities in the CBA in a plausible fashion. Given the favored status of arbitration in American jurisprudence, that is all that is required. In light of this extremely deferential standard of review, the arbitration award survives judicial scrutiny.

### *Defendant's Costs*

Defendant's counterclaim also seeks recovery of all litigation costs, including attorney's fees. Such a remedy is potentially available here as "[u]nder federal common law, a court may

award fees and costs to the winning party in a section 301 action if the losing party's position was 'frivolous, unreasonable, or without foundation.' " *Aggregate Indus.-Ne. Region, Inc. v. Teamsters Local Union No. 42*, 762 F. Supp. 2d 285, 298 (D. Mass. 2010) (quoting *Local 2322, Int'l Bhd. of Elec. Workers v. Verizon New England, Inc.*, 464 F.3d 93, 100 (1st Cir. 2006)). Although its claim fails because of the deferential standard of review for arbitral awards, Plaintiff's position derives from a reasonable interpretation of the CBA, and the language used in the arbitral award was itself unclear. It was therefore not frivolous for Plaintiff to pursue this action and costs are not merited.

### VI. Conclusion

For the foregoing reasons Plaintiff's *Mot. for Summ. J.* (Docket No. 14) is **DENIED**, and *Local Union 170, Int'l Bhd. of Teamsters' Opp. to Angelica Textiles Servs., Inc.'s Mot. for Summ. J. and Cross-Mot. for Summ. J.* (Docket No. 18) is **DENIED** insofar as Defendant seeks costs and attorney's fees and otherwise **ALLOWED**.

**SO ORDERED**

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE